**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, *et al.*, | |
| Plaintiffs, | Case No.: 2:16-cv-02473-GMN-CWH |
| vs. | **ORDER** |
| WESTERN EXPLOSIVES SYSTEMS COMPANY, | |
| Defendant. | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 17), filed by Plaintiffs Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Journeyman and Apprentice Training Trust, and Trustees of the Operating Engineers Vacation-Holiday Savings Trust (collectively "Plaintiffs"). Defendant Western Explosives Systems Company ("Defendant") filed a Response, (ECF No. 21), and Plaintiffs filed a Reply, (ECF No. 23). Also before the Court is Defendant's Motion for Summary Judgment. (ECF No. 18). Plaintiffs filed a Response, (ECF No. 20), and Defendant did not file a Reply. For the reasons stated herein, Plaintiffs' Motion is GRANTED and Defendant's Motion is DENIED.

**I.    BACKGROUND**

This action concerns claims for unpaid benefit contributions under ERISA and the Labor Management Relations Act ("LMRA"). (Am. Compl. ¶ 1, ECF No. 13). Plaintiffs are trustees for collectively bargained multiemployer fringe benefit funds, commonly referred to as "Taft-Hartley Trusts." (*Id.* ¶ 3). The trusts were established by the International Union of Operating

Engineers, Local Union No. 12 ("Local 12") and various employer associations in Southern Nevada and California. (*Id.*).

On June 21, 2002, Plaintiffs claim that Defendant granted a "proxy" to the Nevada Contractors Association ("NCA") for purposes of collective bargaining with Local 12. (Ramos Decl. ¶ 8, Ex. 1 to Pls.' MSJ, ECF No. 17-1); (Notice of Proxy, Ex. 1-B to Pls.' MSJ, ECF No. 17-2). As a result of this proxy, Plaintiffs contends that Defendant bound itself to the Master Labor Agreement ("MLA") for Southern Nevada, which was negotiated between Local 12 and the NCA. (Pls.' MSJ 2:6–12, ECF No. 17). Under the MLA, an employer is required to pay contributions for all "covered work" by its employees. (*Id.* 3:21–4:2).

On August 19, 2002, Defendant sent Plaintiffs an inactive status request form, stating "[w]e do not presently employ Operating Engineers . . . and ask to be relieved of the requirement to file monthly Report Forms with your Trusts." (Inactive Form, Ex. 1-H to Pls.' MSJ, ECF No. 17-9). In this request form, Defendant stipulated to pay contributions in accordance with the collective bargaining agreement ("CBA") should it begin employing persons performing covered work. (*Id.*). In addition, Defendant sent Plaintiffs two "no-man" reports, which are documents submitted by a signatory employer claiming it has no employees performing covered work. (*Id.*); (Ramos Decl. ¶ 15, Ex. 1 to Pls.' MSJ).

After May 14, 2003, Defendant ceased appearing in the NCA's Operating Engineers Proxy List. (Proxy List, Ex. 1-C to Pls.' MSJ, ECF No. 17-4); (Ramos Decl. ¶ 12, Ex. 1 to Pls.' MSJ). Plaintiffs aver that Defendant ceased appearing because it terminated its proxy with NCA. (Pls.' MSJ 3:3–4). Regardless, Plaintiffs claim "termination of its proxy with NCA did not terminate its [CBA] with Local 12"; rather, termination of the proxy caused Defendant to be bound to the "short form" CBA with Local 12, which incorporated the MLA. (*Id.* 3:3–7); (Short Form Agreement, Ex. 1-E to Pls.' MSJ, ECF No. 17-6). Defendant contests ever becoming a party to the MLA or the short-form agreement. (Def.'s MSJ 4:21–5:2, ECF No.

18). Nonetheless, Defendant sent Local 12 a notice of termination of the short-form agreement with an effective termination date of July 1, 2016, which Local 12 thereafter accepted. (Termination Letter, Ex. 5 to Def.'s MSJ, ECF No. 18-4); (Termination Acceptance, Ex. 6 to Def.'s MSJ, ECF No. 18-5).

On January 30, 2017, Plaintiffs conducted an audit of Defendant's payroll records to determine compliance with the CBA. (Babel Decl. ¶¶ 4–6, Ex. 3 to Pls.' MSJ, ECF No. 17-11). Although Defendant denied being bound by the MLA, Defendant agreed to Plaintiffs' audit of its payroll to "avoid a dispute and hopefully resolve any disagreement." (Def.'s MSJ 4:16–17). After conducting the audit, Plaintiffs purportedly found unpaid contributions for the covered work of four employees between May 2015 and January 2016. (Babel Decl. ¶¶ 7–9, Ex. 3 to Pls.' MSJ); (Audit, Ex. 3-A to Pls.' MSJ). Based on these findings, Plaintiffs request from Defendant $55,881.06 in unpaid contributions, $5,588.10 in liquidated damages, and prejudgment interest at a rate of three percent. (Pls.' MSJ 12:3–7).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. <u>DISCUSSION</u>

The parties' respective motions for summary judgment present two overarching issues for the Court: (1) whether Defendant was bound by the CBA with Local 12 and therefore required to make benefit contributions; and (2) whether the employees named in the audit results performed covered work under the MLA. The Court addresses these issues in turn.

**1) Whether Defendant Was Bound by the Collective Bargaining Agreement**

Plaintiffs claim that Defendant bound itself to the CBA after granting its proxy to the NCA. (Pls.' MSJ 4:20–23). Defendants argue that it never entered into such an arrangement with the NCA, and Plaintiffs have failed to prove otherwise by producing the original or a copy of the proxy agreement. (*See* Def.'s MSJ 6:15–7:10); (Def.'s Resp. 9:13–10:4, ECF No. 21). Plaintiffs admit that they "are not in possession of the signed power of attorney or proxy form [Defendant] signed with NCA . . . ." (Pls.' Resp. 5:26–27, ECF No. 20). Nonetheless, Plaintiffs argue that Defendant's contemporaneous admissions that it was bound to the CBA are sufficient to demonstrate its control. (Pls.' Reply 6:13–19, ECF No. 23).

The Ninth Circuit has recognized that a party who is not a signatory to a CBA "can adopt a labor agreement by conduct." *Southern California Painters & Allied Trade District Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1131–33 (9th Cir. 2004). In determining whether an employer has adopted a CBA by conduct, "the relevant inquiry is whether the party

has displayed 'conduct manifesting an intention to abide by the terms of the agreement.' " *Id.* at 1133 (quoting *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 356 (5th Cir. 1981) (en banc)). Thus, whether Plaintiffs have produced the actual proxy agreement is of little importance in this case, so long as the evidence indicates that Defendant's conduct, taken as a whole, constitutes an adoption of the CBA.

Here, based on the evidence in the record, the Court finds that Plaintiffs have met their burden on summary judgment to establish Defendant's assent to the CBA. Notably, Plaintiffs have provided multiple documents indicating that Defendant entered into a proxy agreement with the NCA for the purpose of collective bargaining. (*See* Notice of Proxy, Ex. 1-B to Pls.' MSJ); (Proxy List, Ex. 1-C to Pls.' MSJ). In addition, Plaintiffs have produced Defendant's inactive status request, in which Defendant directly acknowledges its agreement to pay contributions under the CBA should its employees perform covered work. (Inactive Form, Ex. 1-H to Pls.' MSJ). Furthermore, Plaintiffs have provided two "no-man" reports, in which Defendant indicated to Plaintiffs that it had no employees performing covered work under the CBA at the time. (*Id.*); (Ramos Decl. ¶ 15, Ex. 1 to Pls.' MSJ).[1] The Court can discern no valid reason—nor has Defendant offered one—to provide these affirmations to Plaintiffs unless Defendant considered itself bound by the terms of the CBA.

In its opposition, Defendant relies on a sole case from the Northern District of California to support its assertion that Plaintiffs' evidence is insufficient to establish an "adoption by conduct" theory. *See Bd. of Trustees of the Bay Area Roofers Health & Welfare Tr. Fund v. Gudgel Yancey Roofing Inc.*, 225 F. Supp. 3d 1106 (N.D. Cal. 2016). In *Gudgel*, the court held that a "referral page" sent by the union to the employer was insufficient to establish the

---

[1] The Court finds that Plaintiffs have met their burden to demonstrate the authenticity of the above referenced documents for purposes of summary judgment. Notably, Plaintiffs have provided sworn declarations of individuals with personal knowledge of the documents and their distinctive characteristics. *See* Fed. R. Evid. 901(b). Defendant has provided no evidence to counter Plaintiffs showing of authenticity.

employer's adoption of the CBA.  In particular, the court in *Gudgel* noted that the referral page was: (1) filled out by the union and not the employer; and (2) dated outside the requested audit period and therefore immaterial to whether the employer was bound to the CBA during the period in question. *See id.* at 1113.

The facts in the *Gudgel* case are distinguishable from the instant case.  Notably, Plaintiffs in this case rely on multiple documents to support Defendant's adoption of the CBA. Furthermore, in contrast to the *Gudgel* employer's mere passive receipt of the referral form, Defendant here affirmatively filled out and submitted both the inactive request form and "no-man" reports to Plaintiffs.  Accordingly, no question of fact exists as to whether Defendant received the form assenting to the CBA.  Lastly, unlike in *Gudgel*, the evidence in this case is pertinent to the audit period in question.  The Court therefore finds Defendant's arguments concerning *Gudgel* unpersuasive.

As Plaintiffs have met their initial burden, the burden then shifts to the Defendant to establish that a genuine issue of material fact exists for trial. *See Zenith Radio Corp.*, 475 U.S. at 586 (1986).  To this end, Defendant has provided zero declarations or other evidence to support its position that it was not bound by the CBA.  While Defendant does broadly allege in its briefings that it never entered into the proxy agreement, this assertion does not constitute evidence in opposition to the evidence presented by Plaintiffs. *See Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334,* 574 F.2d 484, 486 n. 2 (9th Cir. 1978) (assertions made in legal memoranda or oral argument are not evidence and do not create issues of fact).  Moreover, even to the extent Defendant could sufficiently challenge the proxy agreement, this alone would not create a genuine issue of material fact with respect to the remainder of the evidence in the record.  The Court therefore grants summary judgment for Plaintiffs on this issue and finds that Defendant was bound by the CBA and MLA.

### 2) Whether Defendant's Employees Performed Covered Work

An employer obligated to contribute to an ERISA multiemployer plan is required by statute to make the contributions when due. 29 U.S.C. § 1145. An employer's failure to make required contributions entitles an ERISA trust to recover the damages set out in 29 U.S.C. § 1132(g)(2). *Id.* The available damages include liquidated damages, prejudgment interest, and attorney's fees and costs. 29 U.S.C. § 1132(g)(2).

Here, Plaintiffs argue that they are owed unpaid benefit contributions for all hours worked by the four covered employees between May 2015 and January 2016. (Babel Decl. ¶¶ 7–9, Ex. 3 to Pls.' MSJ); (Audit, Ex. 3-A to Pls.' MSJ). Plaintiffs base this assertion on audit results obtained after reviewing Defendant's payroll records. (*Id.*). According to Plaintiffs, Defendant's employees operated the Sandvik 1500 drilling machine and performed maintenance work, both of which are covered activities. (*See id.* ¶¶ 10–12). Defendant does not contest that under the CBA an employer must pay contributions for "any work whatsoever of the nature covered by [the] agreement." (*See* Def.'s MSJ 7:16–21). Rather, Defendant asserts that Plaintiffs have failed to meet their burden of showing that the work identified in the audit was covered work under the CBA. (*See* Def.'s Resp. 15:15–16:17). Defendant advances three arguments in support of this position. (*Id.*).

First, Defendant argues that the MLA does not identify the Sandvik 1500 and maintenance work as covered. (*Id.* 16:1–10). Contrary to Defendant's assertion, however, Appendix A to the MLA expressly lists "Drilling Machine Operator" as a covered classification, and Plaintiffs have provided uncontroverted evidence that the Sandvik 1500 is a type of drilling machine. (*See* Kinsey Decl. ¶¶ 8–14, Ex. 1 to Pls.' Resp., ECF No. 20-1). Moreover, the MLA also lists maintenance and repair of equipment under its coverages. (*See* MLA at p. 5, Ex. 1-D to Pls.' MSJ, ECF No. 17-5).

Second, Defendant argues that Plaintiffs' auditor impermissibly relied on hearsay evidence in reaching his conclusions. (*See* Def.'s Resp. 16:10–14). The alleged hearsay document that Defendant challenges, however, is its own record produced as part of the audit. (*See* Equipment List, Ex. 3-B to Pls.' MSJ); (Babel Decl. ¶ 11, Ex. 3 to Pls.' MSJ). Accordingly, this document falls within the non-hearsay rule of 801(d)(2) because it is a statement of a party opponent made either in its capacity or through its attorney who was authorized to speak on the subject. *See* Fed. R. Evid. 801(d)(2)(A)-(C).

Lastly, Defendant argues that Plaintiffs have failed to meet their threshold showing to obtain damages for "all hours worked" by the at-issue employees. (*See* Def.'s Resp. 15:15–17). Specifically, Defendant claims that Plaintiffs have failed to establish that Defendant's records are inadequate, as required by the burden shifting analysis detailed in *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988). (*Id.*). This burden shifting analysis, however, only applies when the calculation of damages is obfuscated by an employer's own poor recordkeeping. Here, Plaintiffs do not claim their amount of damages based on inadequate recordkeeping. Rather, Plaintiffs base their damages calculation on the express terms of the MLA, which provides that an employer must pay contributions for *all* hours worked by or paid to any covered employee. (MLA at 72, Ex. 1-D to Pls.' MSJ); *See Waggoner v. C & D Pipelines*, 601 F.2d 456 (9th Cir. 1979) (interpreting similar MLA provisions as requiring contribution for "all hours worked" of an employee who performs any covered work whatsoever). The Court therefore rejects the applicability of *Bricks Masons* to this case and approves of Plaintiffs' method of calculating damages.

Notwithstanding the above arguments of counsel, Defendant has provided no evidence to rebut the lack of a genuine issue of material fact as to Plaintiffs' audit results. The Court therefore grants summary judgment in favor of Plaintiffs on this issue. *See Zenith Radio Corp.*, 475 U.S. at 586 (1986). Based on the evidence presented, Plaintiffs are entitled to an award of

$55,881.04 in unpaid contributions, $5,588.10 in liquidated damages, and prejudgment interest at a rate of three percent as afforded by statute. *See* 29 U.S.C. § 1132(g)(2); 26 U.S.C. § 6621.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 17), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 18), is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment in favor of Plaintiffs in the amount of $61,469.14, plus any applicable prejudgment interest.

The Clerk of Court is instructed to close the case.

**DATED** this __29__ day of March, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge